| | |
|---|---|
| MATHEW ROGERS, individually on his own behalf and on behalf of all others similarly situated, | No. |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| BASEMENT BROS LLC, *doing business as:* EVERYTHING UNDER ONE ROOF, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

1. Mathew Rogers ("Plaintiff"), through his attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Basement Bros, LLC d/b/a Everything Under One Roof ("Defendant").

2. This class action arises from Defendant's persistent disregard for federal law—specifically, the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

3. Defendant uses unlawful and invasive telemarketing tactics to drum up business. Defendant bombards individuals with invasive telemarketing solicitations in clear violation of the TCPA.

4. Now, Plaintiff brings this class action on behalf of himself, and all others harassed by Defendant and its unlawful telemarketing tactics.

### PARTIES

5. Plaintiff, Mathew Rogers, is a natural person and a citizen of Palm Springs, California. He is domiciled in California.

6. Defendant Basement Bros, LLC d/b/a Everything Under One Roof is a Wisconsin limited liability company with its registered agent (Scott Matson) located at 2410 E. Oakwood Road, Oak Creek, Wisconsin, 53154-2339.

## JURISDICTION AND VENUE

7. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the TCPA, 47 U.S.C. § 227.

8. This Court has personal jurisdiction over Defendant because it is headquartered in Wisconsin, regularly conducts business in Wisconsin, and has sufficient minimum contacts in Wisconsin.

9. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## BACKGROUND

### *The Telephone Consumer Protection Act*

10. Congress enacted the Telephone Consumer Protection Act ("TCPA") to combat "the proliferation of intrusive, nuisance calls to consumers and businesses from telemarketers." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 399 (2021) (internal quotation omitted).

11. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 591 U.S. 610, 613 (2020).

12. As used herein, "TCPA" refers to both the federal statute 47 U.S.C. § 227 *et seq.* and its implementing regulations 47 C.F.R. § 64.1200 *et seq.*

13. The TCPA establishes a "private right of action" whereby persons can seek both injunctive and monetary relief. 47 U.S.C. § 227(b)(3).

14. For damages, the TCPA provides "$500 in damages for each such violation[.]" 47 U.S.C. §§ 227(b)(3) and (c)(5). However, the TCPA provides treble damages of $1,500 for each "willful" or "knowing" violation. *Id.*

15. The TCPA prohibits the use of artificial or prerecorded voices when calling cellular telephone numbers. 47 U.S.C. § 227(b)(1)(A)(iii).

16. Telemarketing is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to a person." 47 C.F.R. § 64.1200(f)(13).

17. The term "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" 47 C.F.R. § 64.1200(f)(15).

18. The Supreme Court is clear that text messages are "calls" under the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of [the TCPA].").

19. The TCPA prohibits the use of artificial or prerecorded voices when calling cellular telephone numbers. 47 U.S.C. § 227(b)(1)(A)(iii).

***Plaintiff Mathew Rogers***

20. Plaintiff Rogers is an individual and a "person" under the meaning of 47 U.S.C. § 153(39).

21. Plaintiff's residential telephone number is 608-774-XXXX (the "telephone number").

22. To avoid unsolicited telemarketing calls, Plaintiff personally placed his telephone number on the National Do-Not-Call Registry on January 22, 2007. Since then, Plaintiff has not removed his telephone number from the National Do-Not-Call Registry.

23. Plaintiff uses his telephone number for personal, residential, and household purposes (such as calling friends, family, and scheduling personal appointments).

24. Plaintiff has not used his telephone number for business purposes.

25. Plaintiff has not associated his telephone number with any business.

26. Plaintiff has been the sole owner (i.e., user) of his telephone number for approximately the past ten (10) years.

27. During this time period, Plaintiff has been the sole remunerator (i.e., payer) for any bills arising from his telephone number.

28. Plaintiff has never received a reimbursement from any business for his telephone number.

29. Plaintiff has never taken a business-related tax-deduction for his telephone number.

30. Plaintiff maintains a separate business telephone number of [number withheld]. That telephone number is not the subject of this litigation.

31. Plaintiff is not a current or former customer of Defendant.

32. Plaintiff has never had a business relationship with Defendant.

33. Plaintiff never provided his telephone number to Defendant.

34. Plaintiff has never consented to receive the alleged telephone solicitations from Defendant.

4

### Defendant Engages in Telemarketing

35. Defendant is a home improvement and residential construction business that provides home improvement services, including basement, kitchen, and bathroom remodeling, as well as roofing services.

36. Simply put, Defendant markets and sells home improvement and construction services.

37. Notably, in Defendant's industry, telemarketing is a widespread and standard practice.[1] Indeed, the Bureau of Labor Statistics has reported that the "Business Support Services" industry has one of the highest levels of telemarketing.[2]

38. To sell its products and services, Defendant engages in telemarketing campaigns.

### Defendant violated the TCPA

39. As explained below, Defendant violated the TCPA by calling Plaintiff and leaving him a prerecorded voicemail.

40. On April 7, 2026, Plaintiff received a text message from Defendant from telephone number (414) 240-0621 that stated the following:

> "Do you have any damage you'd like us to take a look at? We have excellent approval rates with State Farm etc…
>
> Reply STOP to Unsubscribe
>
> Thanks, Everything Under One Roof"

41. Later that same day, Plaintiff received a prerecorded call from Defendant from the same telephone number that stated the following:

---

[1] *Occupational Employment and Wage Statistics: Telemarketers*, U.S. CENSUS BUREAU (May 2023) https://www.bls.gov/oes/2023/may/oes419041.htm.

[2] *Id.*

"Hi, this is Sarah calling from everything under one roof. We've been connecting with a few homeowners in your area after that hailstorm, and your info came across our desk. We just wanted to reach out and see if you've noticed any issues with your roof or exterior since then. Hey, just checking in if you've had any issues with your roof or exterior after the hailstorm, let me know and I can help set something up."

42. Defendant's advertised content related to assessing any potential damage to Plaintiff's roof or home. In other words, Defendant called Plaintiff's telephone number and attempted to solicit Plaintiff to purchase Defendant's home repair services.

43. Plaintiff is not and has never been a customer of Defendant's.

44. The prerecorded call featured a crisp and articulate voice—which noticeably lacked the typical pauses, missteps, and "filler words" (e.g., "um") that characterize normal human speech. Thus, on information and belief, the prerecorded call in question used a prerecorded or artificial voice.

45. The message is delivered as a continuous monologue with no pauses for interaction.

46. It begins immediately with a scripted introduction ("Hi, this is Sarah calling from Everything Under One Roof.").

47. It references a generalized event ("the hailstorm") rather than any individualized conversation.

48. The caller leaves a complete solicitation despite reaching voicemail, which is consistent with prerecorded telemarketing campaigns designed to be left on answering machines.

49. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed.

6

50.     On information and belief, Defendant will continue to place numerous telephonic solicitations to Plaintiff and Class Members.

## CLASS ACTION ALLEGATIONS

51.     Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of the following class (the "Class"):

> **Prerecorded Voice Class**: All persons in the United States (1) whose telephone number (2) received one or more telephone calls from, or on behalf of, Defendant (3) during a 12-month period, (4) within four years prior to the commencement of this litigation and up until the date of trial, and (5) when the telephone call used a prerecorded or artificial voice.

52.     Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

53.     Plaintiff reserves the right to amend the class definition.

54.     Plaintiff and Class Members constitute a well-defined community of interest—they are similarly situated persons and were similarly affected and damaged by the alleged conduct of Defendant.

55.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

56.     **Ascertainability**. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. Specifically, all members of the proposed Class can be ascertained through analysis of Defendant's phone records.

7

57.     **Numerosity**. The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes at least several thousand members. After all, telemarketing campaigns necessarily involve communication with large groups of people.

58.     **Typicality**. Plaintiff's claims are typical of those of Class Members because all such claims arise from Defendant's unlawful telemarketing practices.

59.     **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's common interests. His interests do not conflict with Class Members' interests. And Plaintiff's counsel has substantial experience in complex class action litigation and an expertise in TCPA litigation.

60.     **Commonality and Predominance**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class Members—for which a class-wide proceeding can answer for all Class Members. In fact, a class-wide proceeding is necessary to answer, *inter alia*:

61.     whether Defendant violated the TCPA;

62.     whether Defendant violated the TCPA willfully and knowingly;

63.     whether Plaintiff is entitled to statutory damages;

64.     whether Plaintiff is entitled to treble damages;

65.     whether Defendant should be enjoined from further TCPA violations.

66.     **Superiority**. A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would

8

be practically impossible for Class Members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

## FIRST CAUSE OF ACTION
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(d)**
(On Behalf of Plaintiff and the Prerecorded Call Class)

67. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, by making telephonic solicitations, except for emergency purposes, to Plaintiff and the Prerecorded Call Class while using a prerecorded and/or artificial voice.

68. Defendant violated the TCPA willfully or knowingly.

69. Plaintiff and Prerecorded Call Class Members seek statutory damages of $500 (or $1,500) for each unlawful telephone call.

70. Plaintiff and Prerecorded Call Class Members seek injunctive relief prohibiting Defendant from making further unlawful telephonic solicitations to Plaintiff and Prerecorded Call Class Members.

## PRAYER FOR RELIEF

Plaintiff and Class Members respectfully request judgment against Defendant and that the Court enter an order:

9

A.  Certifying this case as a class action on behalf of Plaintiff and the Class, appointing

Plaintiff as Class Representative and appointing his counsel to represent the Class;

B.  Awarding statutory damages to Plaintiff and Class Members;

C.  Providing the injunctive relief requested herein; and

D.  Granting such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all claims so triable.

RESPECTFULLY SUBMITTED this 27th day of July, 2026.

By: */s/ Samuel J. Strauss*
Samuel J. Strauss
Andrew G. Gunem
**STRAUSS BORRELLI PLLC**
980 N Michigan Ave Ste 1610
Chicago, IL 60611-7502
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
sam@straussborrelli.com
agunem@straussborrelli.com

*Counsel for Plaintiff and Proposed Class*